LEON SHAMPINE, Respondent, v. DERWOOD FLEMING, Doing Business as FLEMING MOTOR SALES, Appellant.

Third Department, September 26, 1952.

*Arthur B. Hart* for appellant.

*Allan L. Gurley* for respondent.

BERGAN, J. The action is for breach of warranty on the sale to plaintiff by defendant of a " Rototiller Tractor ", which is a light, gasoline-powered machine used for plowing, harrowing, cutting and other similar work. The complaint pleads that plaintiff bought the machine in July, 1948, " for light ploughing and other uses " and that at the time of purchase plaintiff made known to defendant " the particular purposes " for which he wanted the machine; that defendant warranted the machine to be fit " for said purposes "; that plaintiff " relied upon said warranty "; that the machine " proved to be unfit " and was " totally unfit " for such purposes and would not operate as defendant had warranted; and that within a reasonable time plaintiff notified defendant of his election to rescind the sale and returned the machine to defendant.

Plaintiff has had a recovery upon a verdict by the jury for the entire purchase price paid, plus the amount spent for overhauling the machine and the amount of finance charges. Our view is that the record does not sustain the verdict or the judgment based on it.

There was no proof on the trial that defendant made any express warranty orally or in writing to the plaintiff that the machine would perform in any particular way. The testimony is that defendant demonstrated the operation of a " Rototiller " to plaintiff by leveling off some ground at plaintiff's place. Plaintiff testified that " we worked with it and leveled it off and I decided to buy the machine ".

The theory upon which plaintiff in his points on appeal in this court seeks to sustain his judgment is that there was an " implied warranty that the machine purchased was reasonably fit for the particular purpose for which the machine was required by respondent and that it was of merchantable quality ".

We address ourselves first to the nature of an implied warranty in the sale of machinery of this kind. The omnibus opening language of section 96 of the Personal Property Law, expressive of a general public policy of the State, is that there is no implied warranty as to the quality of goods or their fitness for " any particular purpose " unless the contract to sell or the sale falls literally within one of the enumerated classifications of exception.

Since it is neither pleaded nor proven that plaintiff relied on the defendant's skill or judgment in purchasing the machine the case is not brought within the first enumerated exception in the section. The sale here would seem, rather, to fall literally within subdivision 4 of section 96 which not only is not an exception to the general rule against implied warranties stated in the general opening paragraph but which, indeed, seems to be a re-emphasis of the omnibus rule applied to a specific kind of sales.

This subdivision states that where the contract or sale of an article is by its patent or trade name " there is no implied warranty as to its fitness for any particular purpose." That kind of language adds a re-enforcing strength to the broad policy against implied warranties because while the opening paragraph admits of exceptions, paragraph 4 admits no exception to the kind of contract or sale to which it applies.

The contract between the parties here by its own terms comes literally within subdivision 4. It contains this recital: " Make — Trade Name and Kind of Property (1) Rototiller Tractor ". If the statute is taken for what it says literally, both in its general paragraph and in the specific subdivision reference to this particular kind of a sale, it ought to afford a complete answer to the claim based on implied warranty.

The course of judicial construction accorded to section 96, however, makes a literal reading of its language not an entirely reliable guide in avoiding a warranty by implication for goods sold under a trade name, even when the sale is for trade-name machinery and equipment. There has been some erosion of the statutory language. The leading authority is a food case and it illustrates the reason why the statute in this respect does not give quite the literal assurance that its words seem to imply.

In 1931 *Ryan* v. *Progressive Grocery Stores* (255 N. Y. 388) was decided. Plaintiff's wife came into defendant's grocery store and asked for a loaf of " Ward's bread ". The bread contained a pin which injured plaintiff's mouth. The court was of opinion that the provisions of subdivision 4 of the section

excluded an imputation of reliance on the seller as a basis of liability (p. 391), but it found in the language of subdivision 2 of the section a ground on which a liability could be based. This subdivision provides that where the goods are bought by description from a seller who deals with goods of that description " there is an implied warranty that the goods shall be of merchantable quality ".

It was held that it could be found in the purchase of the loaf of bread that there was to be implied a warranty that the bread was edible; and that it could also be found that the bread containing a pin was not of " merchantable quality ". In such circumstances, therefore, the court would apply subdivision 2 rather than 4 to the sale.

This choice of operative relevancy between the subdivisions of section 96 seems to have been extended far beyond food cases and was applied to Kelvinator refrigerators by the Appellate Division, First Department, in *Kelvinator Sales Corp.* v. *Quabbin Improvement Co.* (234 App. Div. 96) and by the same court to tires bought under a trade name in *Bencoe Exporting & Importing Co.* v. *McGraw Tire & Rubber Co.* (212 App. Div. 136). The decision of the Fourth Department in *Colella* v. *Smith-Fredenburg Corp.* (239 App. Div. 274) is consistent with those decisions. There are some cases holding the other way but there is little doubt that this is the general direction in which decisional law in New York is moving as to machinery and equipment as well as to food products sold for immediate consumption.

If it be assumed that the rule of implied warranty be admissible in this kind of a sale we think, nevertheless, that its breach has not been established in this record and that the verdict should not stand. Plaintiff testified that after the machine was delivered to him he plowed five gardens and that it " worked good, very good ". Many months later, in the following winter, when plaintiff took out the equipment in January to plow snow, it broke down. There is no proof that this was the result of any defect existing when the equipment was sold early in the previous summer.

The record suggests that the single cylinder of such a motor required a mixture of gasoline and oil to keep it lubricated and that in cold weather its lubrication required drainage and checking before it was run. The trouble with the motor in January was found to be that it had a scored block, scored piston and broken rings. Plaintiff's testimony on this issue was the generality that there was oil, gas and grease " in " the

machine " at all times ". We think the record does not fairly sustain the claim that a warranty was breached.

There is another bar to plaintiff's recovery on the theory of implied warranty. The contract itself expressly excludes any implied warranty or representation unless stated therein and there is no such statement. Section 152 of the statute provides that any liability which would arise under a contract to sell or a sale by implication of law " may be negatived " by the parties by " express agreement " and this provision of the statute has, in applicable cases, been followed according to its terms. (*Lumbrazo* v. *Woodruff*, 256 N. Y. 92, relating to the sale of onion sets; *Sayeg* v. *Gloria Light Co.*, 236 App. Div. 761; *Still* v. *Rabin*, 83 N. Y. S. 2d 137, a decision of the Appellate Term relating to the sale of an automobile.)

The judgment and order denying defendant's motion for a direction of a verdict should be reversed on the law and the facts and a verdict directed for the defendant, with costs.

FOSTER, P. J., BREWSTER and COON, JJ., concur; HEFFERNAN, J., taking no part.

Judgment and order denying defendant's motion for a direction of a verdict reversed, on the law and facts, and a verdict directed for the defendant, with costs. [See *post*, p. 1027.]